AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

LARRY LEE NORTHERN, JR.

CASE NUMBER:

# 8 : 12 MJ 1654 AEP

I, the undersigned complainant, being duly sworn, state the following is true and correct

to the best of my knowledge and belief.  From on or about August through October 2011, in

Manatee County, in the Middle District of Florida and elsewhere, the defendant did,

commit theft of Government Funds and aggravated identity theft,

in violation of Title 18, United States Code, Sections 641 and 1028A.  I further state that I am a

Special Agent with Internal Revenue Service, and that this Complaint is based on the following

facts:

## SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Signature of Complainant
Brian W. Mohrmann
Special Agent, IRS-CI

Sworn to before me and subscribed in my presence,

October 18, 2012      at     Tampa, Florida

Anthony E. Porcelli
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian W. Mohrmann, being duly sworn, hereby depose and state as follows:

1. I am employed as a Special Agent with the Criminal Investigation Division of the Internal Revenue Service, U.S. Department of Treasury, and have been so employed for more than seven years. I am currently assigned to the Sarasota, Florida post of duty where my duties and responsibilities as a Special Agent include conducting criminal investigations of individuals and businesses alleged to have violated Federal laws as found in Titles 18, 26 and 31 of the United States Code.

2. During my assignment as a Special Agent with the Internal Revenue Service, I have received extensive training in, and conducted complex financial investigations. I have participated in arrest warrants and search warrants in the capacity of affiant and/or team member. I am currently assigned to numerous investigations involving allegations of identity theft and related income tax refund fraud; one of these investigations is that of Larry Lee Northern Jr., discussed further below.

3. Information in this affidavit is based upon evidence and information obtained directly by me as a result of my personal participation in this investigation, and / or from such evidence and information provided to me by other law enforcement officers and witnesses. This affidavit does not contain all of the facts of which I am aware regarding this investigation, but only those facts necessary to establish probable cause.

4. I make this affidavit in support of a criminal complaint charging Larry Lee Northern Jr. with violations of Title 18, United States Code, Section 641 – Theft of Government Funds and Title 18, United States Code, Section 1028A – Aggravated Identity Theft.

5. As described in detail below, I have probable cause to believe Northern committed the crimes listed in paragraph 4, and those crimes serve as the basis for which a criminal complaint is sought. This affidavit is also submitted in support of an arrest warrant for Northern.

## I.   Identity Theft and Turbo Tax Fraud

6. Based upon information developed during other IRS investigations and your affiant's experience, I know that persons are using names and personal identifying information of individuals whose information was stolen or obtained by fraud to submit fraudulent income tax returns. These returns are typically filled using on-line tax preparation software and websites such as TurboTax, TaxAct, and TaxCut, which are used to electronically transmit the returns to the IRS without the permission or knowledge of the individuals whose information was transmitted. This is typically referred to as Turbo Tax fraud.

7.     Generally, the refunds generated from the fraudulent income tax returns are then loaded onto "prepaid" debit cards from various companies, including Green Dot. Sometimes, in excess of three to five tax refunds are loaded onto one debit card. The debit card may be in the name of the perpetrator of the fraud or in the name of a victim of identity theft.

8. Based on my knowledge and experience, suspects committing this type of tax refund fraud typically prefer to have fraudulently-obtained refunds direct deposited into temporary deposit accounts linked to reloadable prepaid debit cards or "loaded" onto the prepaid debit cards for the following reasons:

(a) The suspects are typically able to apply for prepaid debit cards with little or no proof of identification.

2

(b)  The refunds can be readily converted to cash at ATMs or converted to money orders and other types of monetary instruments without the need for face-to-face interaction.

(c)  The prepaid debit cards can be used at any establishment that accepts credit cards to purchase goods and services without the need to provide a form of identification.

(d)  The suspects avoid the difficulties associated with cashing a U.S. Treasury refund check in the name of someone else and/or the creation of a paper trail.

In short, prepaid debit cards allow the perpetrators access to the funds with greater anonymity.

9.  Generally, the individuals committing this type of fraud file multiple fraudulent income tax returns and claim multiple fraudulent refunds. Further, these individuals typically file the fraudulent returns with the same or similar information with which they have had success in defeating the IRS fraud detection filters. For example, if an individual is able to obtain a fraudulent refund by filing a return listing interest income and income tax withholdings of a certain dollar amount, the individual may repeatedly use the same items and amounts in an effort to obtain a high level of IRS acceptance of the returns.

## II.   Facts Supporting Probable Cause

10. During November 2011, I received notification that Larry Lee Northern Jr. was arrested pursuant to a traffic stop conducted by Florida Highway Patrol (FHP). At the time of his arrest for cannabis possession and pursuant to a search incident to that arrest, Northern was initially found to be in possession of two personal cell phones, fifteen Green Dot prepaid debit cards titled to individuals other than Northern, 17 Walmart MoneyGram gift cards which were not titled to any specific individual, and internal corporate documents containing personal identification information for 32 clients of Optimum HealthCare, Inc (Optimum). The two cell phones were not further identified or seized

3

by FHP at that time. The Green Dot prepaid debit cards were titled to other individuals – eight cards were titled in names which were listed on the Optimum documents. The Walmart MoneyGram cards were titled to "Valued Customer." Northern has never been an employee with Optimum.

11. Post-<u>Miranda</u>, Northern stated to FHP troopers that he was not responsible for making the prepaid debit cards, but rather a female asked him if he wanted to make some extra money by delivering the cards to "a place." Northern refused to disclose where he was to deliver the cards and said only that he was to call the female when he arrived there. Northern refused to disclose the names or phone numbers of the female or others involved.

12. While FHP troopers searched Northern's vehicle, the rear seat digital recording camera in one of the patrol units captured Northern making phone calls to an unknown individual on one of his cell phones. In reviewing the recording, the conversation alluded to additional money and Northern asked the unidentified individual whether he should divulge the location of the currency to the police, to which the voice on the phone was heard saying "no."

13. In response to the digital video recording of Northern captured by the patrol unit, FHP subsequently obtained a search warrant for the vehicle and subsequently discovered $15,700 cash (solely $100 bills) located behind the battery in the trunk. In addition to the currency, FHP also seized a laptop computer discovered during the search.

14. At the time of the stop, Northern was driving a 2009 Dodge Challenger which was still titled in the name of the seller, who reported to FHP that he sold the vehicle to Northern for $20,000, and used the proceeds of the sale to pay off his lien.

15. FHP obtained funding and transaction information from the issuer of the 15 Green Dot

prepaid debit cards which were titled to other individuals. The remaining balances on those cards totaled $826.55. For nine of those cards reviewed by your affiant, approximately $89,800.00 in total was spent, with approximately 90% expended via withdrawal or transfer. From my experience, these transfers are likely to have been made to other prepaid debit cards and money orders. These transactions were completed from August 12, 2011, through October 5, 2011, one day before Northern's state arrest. These expenditures / withdrawals of funds credited to these Green Dot prepaid debit cards were made at locations ranging from Belle Glade, Florida, to various towns in southern Georgia.

16. FHP obtained funding information from the issuer of the Walmart MoneyGram cards not titled to any specific individual(s). The remaining balances on those cards totaled $26,361.65.

17. The electronic Crimes Unit of the U.S. Secret Service examined the laptop computer seized by FHP. Evidence was discovered that the user of the computer repeatedly searched the online website of www.ancestry.com. This same evidence revealed that the user of the computer researched 72 individuals, 45 of whom had the last name of Northern or McCoy (maiden name of Northern's mother). Of these 72 individuals, all but one was deceased.

18. I know from my training and experience in conducting similar investigations that suspects frequently use personal identification information of deceased individuals to file false income tax returns in furtherance of their plan to fraudulently obtain income tax refunds.

19. Following my receipt of evidence and information discovered by the FHP pursuant to the arrest of Northern, I retrieved federal income tax return information for individuals whose names were imprinted on the Green Dot prepaid debit cards and Optimum documents. This query revealed that 2010 income tax returns for 15 of these individuals were filed with what

5

was likely false income/expense information in order to fraudulently obtain federal income tax refunds. The income tax refunds claimed on these 15 returns totaled $121,642, each one claiming a refund in excess of $7,000. The determination that these 15 returns were false was based upon the similar, if not identical, income/expense information reported on them. Characteristics common among the 15 returns in question include the following: sole source of income from taxable interest; penalties for early withdrawal of savings account; similar income tax amounts withheld from that income; and similar income tax refund amounts claimed. On nearly all of the 15 returns in question, these four lines represent the only income/expense information reported.

20. Eight of the 10 false returns filed listed a Belle Glade, Florida mailing address. Northern was born and raised in Belle Glade, Florida, but has resided in Tampa, Florida for the last several years. Belle Glade, Florida is approximately 200 miles from Tampa, Florida.

21. Management personnel and legal counsel of Optimum, which is based in Tampa, Florida, verified that the document found in Northern's possession at the time of his arrest was in fact an internal corporate document belonging to Optimum. A confidential informant told law enforcement and Optimum's Fraud Unit that Helen Weaver, a Claims Specialist with Optimum, had stolen personal identification information of numerous clients of Optimum and provided that information to an acquaintance named Candace McGill. McGill has never been an employee of Optimum. The confidential informant appeared to law enforcement to be reliable based upon having a social and work relationship with Weaver and having extensive personal and social knowledge of McGill.

22. Tax return information for McGill revealed her income tax returns for both 2010 and 2011 had reporting characteristics consistent with those fraudulent returns filed for the individuals

named on the Green Dot prepaid debit cards found in Northern's possession at the time of his arrest. McGill's false 2010 income tax return was filed during September 2011, which was only weeks after (August 2011) the filing of many of the returns in the names imprinted on the Green Dot prepaid debit cards found on Northern.

23. Research of online social media sites revealed that Northern and McGill know each other. This research, and that of information maintained in databases available to law enforcement, also revealed that both have friends and / or family in southern Georgia.

24. On January 25, 2012, Northern pled guilty to state of Florida charges of Trafficking in Counterfeit Credit Cards as well as Possession of Cannabis (less than 20 grams discovered by FHP at time of Northern's arrest). Northern is currently incarcerated at the Manatee County Jail pursuant to a 90-day sentence he received. Northern is expected to be released from Manatee County Jail on / about October 19, 2012.

25. During August and September 2012, Special Agent Colleen McBurrows, U.S. Department of Health and Human Services, reviewed recordings of phone calls made by Northern from the Manatee County Jail. An automated system provides inmates with a verbal message that calls to and from the jail may be recorded prior to the start of the conversation. Signs are also posted at the Manatee County jail informing inmates that conversations during visitations may be recorded. Numerous calls made by Northern were to unidentified females. Northern also called his sister in order to contact yet other unidentified females. These calls appeared to indicate that Northern anticipated his release from jail, and was concerned about not having money. Northern specifically referenced returning to Georgia and trying to transfer his probation supervision there, but even if he could not, Northern planned to provide a friend's address in Tampa to his probation officer and go to Georgia.

## III.    CONCLUSION

26. Based upon the facts described in this affidavit, your affiant submits that probable cause

exists to believe that the defendant, Larry Lee Northern Jr., participated in criminal activities

in violation of Title 18, United States Code, Section 641 – Theft of Government Funds and

Title 18, United States Code, Section 1028A – Aggravated Identity Theft. In consideration

of the foregoing, your affiant respectfully requests that this Court issue a warrant

authorizing the arrest of the defendant.

Further affiant sayeth naught.

Brian W. Mohrmann, Special Agent
Internal Revenue Service
Criminal Investigation

Sworn and subscribed to before me
this ___ day of October, 2012

ANTHONY E. PORCELLI
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF FLORIDA

8